1 | LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
2 | SHAWN A. WILLIAMS (213113)
   100 Pine Street, Suite 2600
3 | San Francisco, CA 94111
   Telephone: 415/288-4545
4 | 415/288-4534 (fax)
   shawnw@lerachlaw.com
5 |   – and –
   WILLIAM S. LERACH (68581)
6 | DARREN J. ROBBINS (168593)
   TRAVIS E. DOWNS III (148274)
7 | 655 West Broadway, Suite 1900
   San Diego, CA 92101
8 | Telephone: 619/231-1058
   619/231-7423 (fax)
9 | billl@lerachlaw.com
   darrenr@lerachlaw.com
10 | travisd@lerachlaw.com

E-filing

11 | Attorneys for Plaintiff

ORIGINAL
FILED
JUL 1? 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14 | SAN JOSE DIVISION

RMW
RS

15 | WAYNE COUNTY EMPLOYEES'
   RETIREMENT SYSTEM, Derivatively on
16 | Behalf of ALTERA CORPORATION,

17 |                          Plaintiff,

18 |        vs.

19 | JOHN P. DAANE, ROBERT W. REED,
   DENIS M. BERLAN, NATHAN
20 | SARKISIAN, KATHERINE E. SCHUELKE,
   ROBERT J. FINOCCHIO, JR., KEVIN
21 | MCGARITY, PAUL NEWHAGEN,
   WILLIAM E. TERRY and SUSAN WANG,
22 |
                          Defendants,
23 |
         – and –
24 |
   ALTERA CORPORATION, a Delaware
25 | corporation,

26 |                  Nominal Defendant.
27 |
28 |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

VIA FAX

No. C 06 4352

VERIFIED SHAREHOLDER DERIVATIVE
COMPLAINT FOR VIOLATION OF THE
FEDERAL SECURITIES LAWS AND
STATE LAW CLAIMS FOR BREACH OF
FIDUCIARY DUTY, ABUSE OF
CONTROL, CONSTRUCTIVE FRAUD,
CORPORATE WASTE, UNJUST
ENRICHMENT, GROSS
MISMANAGEMENT, ACTION FOR
ACCOUNTING AND VIOLATION OF
CALIFORNIA CORPORATIONS CODE

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of Altera Corporation ("Altera" or the "Company") on behalf of the Company against its entire Board of Directors and certain current officers and former top officers and/or directors (collectively, "Defendants").  This action seeks to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement, arising out of a scheme and wrongful course of business whereby Defendants allowed senior Altera insiders to divert hundreds of millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with hundreds of thousands of stock options granted to Altera insiders.  Each of the Defendants also participated in the concealment of the backdating option scheme complained of herein and/or refused to take advantage of the Company's legal rights to require these senior insiders to disgorge the hundreds of millions in illicitly obtained incentive compensation and proceeds diverted to them since 1995.

2.     Between 1996 and 2005, Defendants also caused Altera to file false and misleading statements with the Securities and Exchange Commission ("SEC"), including Proxy Statements filed with the SEC which stated that the options granted by Altera carried with them an exercise price that was not less than the fair market value of Altera stock on the date of grant and issuance.

3.     In fact, Defendants were aware that the practices employed by the Board allowed the stock option grants to be *backdated* to dates when the Company's shares were trading at or near the lowest price for that relevant period.  By 2005, Defendants' backdating scheme had yielded stock option grants to the Company's executive officers worth millions of dollars.  These grants were included in more than $131.8 million in stock sale proceeds for Defendants.

4.     Altera's financial results as reported and filed with the SEC were false.  Defendants' misrepresentations and wrongful course of conduct violated the Securities Exchange Act of 1934 (the "Exchange Act"), as well as California and Delaware law.  By authorizing and/or acquiescing in the stock option backdating scheme, Defendants: (i) caused Altera to issue false statements; (ii) diverted hundreds of millions of dollars of corporate assets to senior Altera executives; and (iii) subjected Altera to potential liability from regulators, including the SEC and the IRS.

5.      Defendants' gross mismanagement and malfeasance over the past decade has exposed Altera and its senior executives to criminal and civil liability for issuing false and misleading financial statements.  Specifically, defendants caused or allowed Altera to issue statements that failed to disclose or misstated the following: (i) that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and projections; (ii) that because of improperly recorded stock-based compensation expenses, the Company's financial results violated Generally Accepted Accounting Principles ("GAAP"); and (iii) that the Company's public disclosures presented an inflated view of Altera's earnings and earnings per share.

6.      Defendants' malfeasance and mismanagement during the relevant period has wreaked hundreds of millions of dollars of damages on Altera.  The Company's senior executives were incentivized to over-pay themselves, to profit from their misconduct by cashing in on under-priced stock options and to issue false financial statements to cover up their misdeeds.  Defendants' breaches of fiduciary duties in the administration of the Company's stock option plans so polluted the plans with grant date manipulations so as to void all grants made pursuant to the plans.  The Company has now been mentioned as one of several companies likely to have manipulated options. Meanwhile, certain of the Defendants, who received under-priced stock options and/or knew material non-public information regarding Altera's internal control problems, abused their fiduciary relationship with the Company by selling over $131.8 million worth of their personally held shares at artificially inflated prices during the relevant period.  This action seeks recovery for Altera against these faithless fiduciaries, as Altera's Board of Directors, as currently composed, is simply unable or unwilling to do so.

## INTRADISTRICT ASSIGNMENT

7.      A substantial part of the events or omissions which give rise to the claims in this action occurred in the county of Santa Clara, and as such this action is properly assigned to the San Jose division of this Court.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under §§10(b), 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated

1  thereunder, and under California and Delaware law for breach of fiduciary duty, abuse of control,

2  constructive fraud, corporate waste, unjust enrichment and gross mismanagement.  In connection

3  with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly,

4  used the means and instrumentalities of interstate commerce, the United States mail and the facilities

5  of a national securities market.

6        9.       This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15

7  U.S.C. §78aa, as well as 28 U.S.C. §§1331 and 1337.  This Court also has supplemental jurisdiction

8  over the state law claims asserted herein pursuant to 28 U.S.C. §1367.

9        10.      This action is not a collusive one to confer jurisdiction on a court of the United States

10  which it would not otherwise have.

11        11.      Venue is proper in this district pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa,

12  as well as 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and

13  dissemination of materially false and misleading information, occurred in substantial part in this

14  District. Altera is located in and conducts its business in this District.  Further, Defendants conduct

15  business in this District, and certain of the Defendants are citizens of California and reside in this

16  District.

17                                    **PARTIES**

18        12.      Plaintiff Wayne County Employees' Retirement System is, and at all times relevant

19  hereto was, a shareholder of Altera.

20        13.      Nominal party Altera designs, manufactures and markets programmable logic

21  devices, HardCopy structured application-specific integrated circuit devices, pre-defined design

22  building blocks known as intellectual property cores and associated development tools. The

23  Company's programmable logic devices, which consist of field-programmable gate arrays and

24  complex programmable logic devices are semiconductor integrated circuits that are manufactured as

25  standard chips that its customers program to perform desired logic functions within their electronic

26  systems. Altera maintains its corporate headquarters at 101 Innovation Drive, San Jose, California.

27        14.      Defendant John P. Daane ("Daane") joined the Company as President and Chief

28  Executive Officer in November 2000, and was named Chairman of the Board in May 2003.  He has

SHAREHOLDER DERIVATIVE COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS          - 3 -

served as one of the Company's directors since December 2000.  At all relevant times, Daane actively participated in the management of Altera's daily business affairs and finances.  He also actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 2000-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  Based on his knowledge of material non-public information regarding the Company, defendant Daane violated Cal. Corp. Code §§25402 and 25502.5 by selling 230,000 Altera shares for insider trading proceeds of more than $4.9 million.

15.    Defendant Robert W. Reed ("Reed") has served as one of the Company's directors since October 1994 and as the Company's Vice Chairman of the Board since January 2001.  In January 2003, he was elected Lead Independent Director.  At all relevant times, Reed served on the Audit Committee of the Altera Board.  The Audit Committee approved Altera's false financial statements and financial results between 1996-2005.  Reed also actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  Based on his knowledge of material non-public information regarding the Company, defendant Reed violated Cal. Corp. Code §§25402 and 25502.5 by selling 360,040 Altera shares for insider trading proceeds of more than $8.0 million.

16.    Defendant Denis M. Berlan ("Berlan") joined the Company in December 1989 as Vice President, Product Engineering and was named Vice President, Operations and Product Engineering in October 1994.  In January 1996, he was named Vice President, Operations.  In January 1997, he was named Executive Vice President and Chief Operating Officer.  Berlan actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases.  Based on his knowledge of material non-public information regarding the Company, defendant Berlan violated Cal. Corp. Code §§25402 and 25502.5 by selling 1.261 million Altera shares for insider trading proceeds of more than $27.5 million.

17.    Defendant Nathan Sarkisian ("Sarkisian") joined the Company in June 1992 as Corporate Controller.  He was appointed Vice President, Finance and Chief Financial Officer in

August 1995 and Senior Vice President and Chief Financial Officer in March 1998. Sarkisian also actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on his knowledge of material non-public information regarding the Company, defendant Sarkisian violated Cal. Corp. Code §§25402 and 25502.5 by selling 1.43 million Altera shares for insider trading proceeds of more than $35.3 million.

18.   Defendant Katherine E. Schuelke ("Schuelke") joined the Company in March 1996 as Corporate Attorney. She became Senior Corporate Attorney in July 1997 and Assistant General Counsel and Assistant Secretary in July 1999. In October 2001, she was appointed Vice President, General Counsel and Secretary. Schuelke also actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 1996-2005, as well as the corresponding reports on SEC Form 10-K and press releases. Based on her knowledge of material non-public information regarding the Company, defendant Schuelke violated Cal. Corp. Code §§25402 and 25502.5 by selling 72,276 Altera shares for insider trading proceeds of more than $1.43 million.

19.   Defendant Robert J. Finocchio, Jr. ("Finocchio") has served as one of the directors of the Company since January 2002. At all relevant times, Finocchio served on the Audit Committee of the Altera Board. The Audit Committee approved Altera's false financial statements and financial results between 2002-2005. Finocchio also actively participated in the preparation, review and approval of Altera's publicly reported financial results and financial statements for 2002-2005, as well as the corresponding reports on SEC Form 10-K and press releases.

20.   Defendant Kevin McGarity ("McGarity") has served as one of the Company's directors since March 2004. At all relevant times, McGarity served on the Compensation Committee of the Altera Board.

21.   Defendant Paul Newhagen ("Newhagen") has served as one of the Company's directors since July 1987. Based on his knowledge of material non-public information regarding the Company, defendant Newhagen violated Cal. Corp. Code §§25402 and 25502.5 by selling 2.4 million Altera shares for insider trading proceeds of more than $44.53 million.

22.     Defendant William E. Terry ("Terry") has served as one of the Company's directors since August 1994. At all relevant times, Terry served on the Compensation and Nominating and Governance Committees of the Altera Board. Based on his knowledge of material non-public information regarding the Company, defendant Terry violated Cal. Corp. Code §§25402 and 25502.5 by selling 430,000 Altera shares for insider trading proceeds of more than $10.03 million.

23.     Defendant Susan Wang ("Wang") has served as one of the Company's directors since October 2003. At all relevant times, Wang served on the Audit Committee of the Altera Board.

24.     The defendants identified in ¶¶14-15 and 19-23 are referred to herein as the "Director Defendants." The defendants identified in ¶¶14 and 16-18 are referred to herein as the "Officer Defendants." The defendants identified in ¶¶14-18 and 21-22 are referred to herein as the "Insider Selling Defendants."

## DEFENDANTS' DUTIES

25.     Each of the Defendants owed the Company the duty to exercise a high degree of due care, loyalty and good faith in the performance of their individual responsibilities with respect to the management and administration of the affairs of Altera, as well as the duty of full and candid disclosure of all material facts related thereto. In addition, under applicable law, these Defendants owed to Altera the duty to exercise care that public statements regarding the Company and its business and finances were accurate, complete and truthful and not in any way materially misleading. The conduct of Altera's officers and directors who illegally engaged in insider trading in violation of Cal. Corp. Code §§25402 and 25502.5 has been ratified by Altera's Board, which failed to take action against them.

26.     By reason of their positions as officers, directors and fiduciaries of Altera and because of their ability to control the business and corporate affairs of the Company, the Defendants owed Altera and its shareholders fiduciary obligations of candor, trust, loyalty and care, and were required to use their ability to control and manage Altera in a fair, just, honest and equitable manner, and to act in furtherance of the best interests of Altera and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to refrain from

1  utilizing their control over Altera to divert assets to themselves via improper and/or unlawful

2  practices. Defendants also had a duty to promptly disseminate accurate and truthful information

3  with respect to the Company's operations, earnings and compensation practices.

4      27.     Because of their positions of control and authority as directors or officers of Altera,

5  each of the Defendants was able to and did, directly and indirectly, control the wrongful acts

6  complained of herein. As to the Director Defendants, these acts include: (i) agreement to and/or

7  acquiescence in Defendants' option backdating scheme; (ii) willingness to cause Altera to

8  disseminate false Proxy Statements for 1996-2005, which Proxy Statements failed to disclose

9  Defendants' option backdating scheme and omitted the fact that executive officers were allowed to

10  backdate their stock option grants in order to manipulate the strike price of the stock options they

11  received. Because of their positions with Altera, each of the Defendants was aware of these

12  wrongful acts, had access to adverse non-public information and was required to disclose these facts

13  promptly and accurately to Altera shareholders and the financial markets but failed to do so.

14      28.     Between 1996 and 2005, Defendants repeated in each Proxy Statement that the stock

15  option grants made during that period carried an exercise price that was not less than the fair market

16  value of Altera stock on the date granted, as calculated by the public trading price of the stock at the

17  market's close on that date. However, Defendants concealed until May 2006 that the stock option

18  grants were repeatedly and consciously *backdated* to ensure that the strike price associated with the

19  option grants was at or near the lowest trading price for that fiscal period. Due to Defendants'

20  breach of their fiduciary duty in the administration of the stock option plans, plaintiff seeks to have

21  the directors' and officers' plans voided and gains from those plans returned to the Company. In the

22  alternative, plaintiff seeks to have all of the unexercised options granted to defendants between 1996

23  and 2000 cancelled, the financial gains obtained via the exercise of such options returned to the

24  Company and to have Defendants revise the Company's financial statements to reflect the truth

25  concerning these option grants.

26      29.     To discharge their duties, Defendants were required to exercise reasonable and

27  prudent supervision over the management and financial affairs of Altera. By virtue of this

28  obligation, these Defendants were required, among other things:

1          (a)     to, in good faith, manage, conduct, supervise and direct the business and

2  affairs of Altera carefully and in good faith in accordance with state and federal laws and regulations

3  and the articles and by-laws of Altera;

4          (b)     to exercise reasonable control and supervision over the officers and employees

5  of Altera;

6          (c)     to exercise reasonable care and good faith in evaluation of the prudence and

7  soundness of policies and practices proposed to be undertaken by Altera;

8          (d)     to ensure that Altera did not engage in unsafe, imprudent or unsound practices

9  and that Altera complied with all applicable laws and regulations;

10         (e)     to establish guidelines and policies adequately governing the structure and

11  organization of the Company's operations;

12         (f)     to establish guidelines and policies adequately governing Altera's accounting

13  practices;

14         (g)     to neither violate nor knowingly permit any officer, director or employee of

15  Altera to violate Cal. Corp. Code §§25402 and 25502.5;

16         (h)     to maintain a proper division of authority and responsibility among the

17  officers and directors of Altera so as to prevent the dominance of any officer or director in the

18  conduct of the business and affairs of Altera;

19         (i)     to ensure that Altera did not engage in unsafe, imprudent or unsound practices

20  and to become and remain informed as to how Altera was, in fact, operating;

21         (j)     to maintain and implement an adequate and functioning system of internal

22  financial and accounting controls and management information systems, such that Altera's assets

23  would be safeguarded, its financial statements and information would be accurately recorded and

24  reported, and corporate managers would be given prompt notice of serious problems or divergences

25  so that risk to the corporation would be minimized; and

26         (k)     to supervise the preparation and filing of financial results and financial

27  statements required by law from Altera, including the Company's Reports on Form 10-K, and to

28  examine and evaluate any reports of examination, audits, or other information required by law

concerning the financial condition of Altera and to make full and accurate disclosure of all material facts concerning, among other things, each of the subjects and duties set forth above.

30.     As officers, directors and/or controlling persons of a publicly held company whose common stock was, at all relevant times, registered with the SEC, Defendants had a duty to promptly disseminate accurate and truthful information with respect to the Company's publicly reported financial results and financial statements, products, management, earnings, and present and future business prospects, to correct any previously issued statements from any source that had become untrue, and to disclose any trends that would materially affect earnings and the present and future financial operating results of Altera, so that the market price of the Company's stock would be based upon truthful and accurate information.

31.     At all relevant times, Defendants occupied positions with Altera or were associated with the Company in such a manner as to make them privy to confidential proprietary information concerning Altera, its operations, finances, financial condition, products and present and future business prospects. Because of these positions and such access, each of these Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public.

32.     Notwithstanding their duty to refrain from trading in Altera stock while in the possession of material, adverse, non-public information concerning Altera, Altera's top insiders, with Defendants' knowledge or approval, sold more than 6.2 million shares of Altera stock at artificially inflated prices for proceeds of almost $131.8 million, in direct violation of Cal. Corp. Code §§25402 and 25502.5.

## AIDING AND ABETTING AND CONCERTED ACTION

33.     In committing the wrongful acts alleged herein, Defendants have pursued or joined in the pursuit of a common course of conduct and acted in concert with one another in furtherance of their common plan.

34.   During all times relevant hereto, Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was allowing its directors and senior officers to divert hundreds of millions of dollars to Altera insiders and directors and causing Altera to misrepresent its financial results; (ii) maintain Defendants' executive and directorial positions at Altera and the profits, power and prestige which Defendants enjoyed as a result of these positions; and (iii) deceive the investing public, including shareholders of Altera, regarding Defendants' compensation practices and Altera's financial performance.

35.   The purpose and effect of Defendants' common course of conduct was, among other things, to disguise Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment, to conceal adverse information concerning the Company's operation and financial condition and to artificially inflate the price of Altera common stock so they could dispose of millions of dollars of their own Altera shares, and enhance their executive and directorial positions and receive the substantial compensation they obtained as a result thereof.

36.   Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Altera's financial results.  Each of the Defendants was a direct, necessary, and substantial participant in the common enterprise and/or common course of conduct complained of herein.

37.   Each of the Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

38.   Altera designs, manufactures and markets programmable logic devices, HardCopy structured application-specific integrated circuit devices, pre-defined design building blocks known as intellectual property cores and associated development tools.  The Company's programmable

1   logic devices, which consist of field-programmable gate arrays and complex programmable logic

2   devices are semiconductor integrated circuits that are manufactured as standard chips that its

3   customers program to perform desired logic functions within their electronic systems.

4       39.     A stock option can give the holder the right to buy stock at a certain price in the

5   future. Typically, companies set that price at the same time their directors approve an option grant,

6   with an exercise price – also known as the strike price – usually set at the closing price of the stock

7   that day, the closing price of the night before or by computing an average of the high and low prices

8   on the day of the vote. By manipulating the grant dates, Altera was able to provide executives and

9   employees with the lowest possible exercise price. The lower the exercise price, the worse off

10  Altera was because it would receive less cash for the option purchased. However, such manipulation

11  would allow the director, officer or other employee to increase the amount he would pocket by a

12  commensurate amount. So, as insiders, Defendants were motivated to "cherry pick" the dates on

13  which the prices would be set.

14  **THE STOCK OPTION GRANTS**

15      40.     On June 21, 2006, Altera announced plans to restate results from 1996 through 2005

16  to correct its accounting to reflect extra stock-based compensation charges. The Company issued a

17  press release on June 21, 2006, after the market closed, entitled "Altera Announced Expected

18  Restatement Related to Stock-Based Compensation." The release stated:

19      Altera Corporation today announced that it expects to restate its previously issued
        financial statements to correct errors related to accounting for stock-based
20      compensation expense.

21      As previously announced, the company's board of directors has established a
        special committee of independent directors to review the company's historical stock
22      option practices and related accounting. The special committee is being assisted by
        independent legal counsel and outside accounting experts. At this time, the special
23      committee has not completed its work nor reached its final conclusions and is
        continuing its review.

24
        The special committee has reached a preliminary conclusion that the actual
25      measurement dates for certain stock option grants issued between 1996 and 2000
        differ from the recorded grant dates for such awards. As a result, Altera expects to
26      record additional non-cash charges for stock-based compensation expense in prior
        periods. Altera believes that these charges are material and, accordingly, expects to
27      restate its financial statements for the fiscal years ended 1996 through 2005. The
        company has not yet determined the tax impact that may result from this matter.
28      Based on information presently available, the company does not anticipate that the

restatement will result in a material charge to fiscal year 2005. Because the special committee's review is still ongoing there may be additional years subject to restatement and the impact to fiscal year 2005 may be different than presently anticipated.

Accordingly, on June 19, 2006, the company's audit committee, after consultation with management and the special committee, determined that Altera's financial statements and any related reports of its independent registered public accounting firm for the fiscal years ended 1996 through 2005 should no longer be relied upon. Altera intends to file its restated financial statements and its quarterly report for the period ended March 31, 2006, as soon as practicable after the completion of the special committee's investigation.

The audit committee has discussed the above matters with the company's independent registered public accounting firm. However, as the special committee's review has not been completed, the final conclusions of its review are not yet known to the independent registered public accounting firm.

Additionally, Altera is evaluating Management's Report on Internal Controls Over Financial Reporting set forth in the company's Annual Report on Form 10-K for the fiscal year ended December 30, 2005. Although the company has not yet completed its analysis of the impact of this situation on its internal controls over financial reporting, the company has determined that it is likely that it had a material weakness in internal control over financial reporting as of December 30, 2005.

Any stock-based compensation charges incurred as a result of the restatement would have the effect of decreasing reported income or increasing reported loss from operations, and decreasing reported net income or increasing reported net loss, and decreasing reported retained earnings figures contained in Altera's historical financial statements for the periods mentioned above. Altera does not expect that the anticipated restatement will have any impact on its historical revenues.

Altera expects to announce second quarter revenue results and third quarter revenue guidance on July 24, 2006. The company will not be in a position to announce additional financial results for the second quarter until the special committee has completed its investigation and the company has filed its restated financial statements and its quarterly report for the period ended March 31, 2006.

41.     Below are several of Altera's grants which occurred right before significant stock price increases (adjusted for stock split):

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





42.     Complicating matters and magnifying the harm to Altera, during the relevant period, Altera's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated.  They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

43.     Specifically, in many instances the reported dates Altera stock options were granted differed from the dates on which the options appear to have been actually granted.  The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. Complicating matters and magnifying the harm to Altera, during the relevant period, Altera's internal controls and accounting controls with respect to option grants and exercises, and its financial reporting, were grossly inadequate. The weaknesses allowed dates of both grants and exercises to be manipulated and the Company's executive compensation expenses to be materially understated.  They also allowed grant dates to be changed to provide executives with more favorably priced options, in effect augmenting their compensation, with no benefit running to the Company.

44.     Specifically, in many instances the reported dates Altera stock options were granted differed from the dates on which the options appear to have been actually granted.  The practice applied to the overwhelming majority of stock option grants made during the relevant period, which allowed executives and employees to make more money on their options because it set a lower "strike price" at which the options could be exercised, allowing employees to take larger profits when the stock price later rose. *In almost every case of misdating, the price of Altera shares on the reported option-grant date was lower than the share price on the actual day the options were issued*.

45.     Through their fiduciary duties of care, good faith and loyalty, the Defendants owed to Altera a duty to ensure that the Company's financial reporting fairly presented, in all material

1  respects, the operations and financial condition of the Company.  In order to adequately carry out

2  these duties, it is necessary for the Defendants to know and understand the material non-public

3  information to be either disclosed or omitted from the Company's public statements.  This material

4  non-public information included the problems Altera faced because of its deficient internal controls.

5  Furthermore, defendants Reed, Finocchio and Wang, as members of the Audit Committee during the

6  relevant period, had a special duty to know and understand this material information as set out in the

7  Audit Committee's charter, which provides that the Audit Committee is responsible for reviewing, in

8  conjunction with management, the Company's policies generally with respect to the Company's

9  earnings press releases and with respect to financial information and earnings guidance provided to

10  analysts and rating agencies.  Defendants Daane, Berlan, Sarkisian and Schuelke, as officers of

11  Altera, had ample opportunity to discuss this material information with their fellow officers at

12  management meetings and via internal corporate documents and reports.  Moreover, the Director

13  Defendants had ample opportunity to discuss this material information with fellow directors at any

14  of the scores of Board meetings that occurred during the relevant period as well as at committee

15  meetings of the Board.  Despite these duties, Defendants negligently, recklessly, and/or intentionally

16  caused or allowed, by their actions or inactions, the misleading statements to be disseminated by

17  Altera to the investing public and the Company's shareholders during the relevant period.

18      46.  Specifically, since 1996, Defendants have caused Altera to report false and

19  misleading fiscal and quarterly financial results which materially understated its compensation

20  expenses and thus overstated its earnings as follows (adjusted for splits):

| Fiscal Year | Reported Sales | Reported Earnings (Loss) | Reported Basic EPS |
|---|---|---|---|
| 1996 | $497.3M | $109.1M | $0.29 |
| 1997 | $631.1M | $133.5M | $0.39 |
| 1998 | $654.3M | $154.4M | $0.39 |
| 1999 | $836.6M | $224.0M | $0.53 |
| 2000 | $1.377B | $(39.8M) | $0.96 |
| 2001 | $839.4M | $91.3M | $(0.10) |
| 2002 | $711.7M | $155.1M | $0.20 |
| 2003 | $827.2M | $275.1M | $0.35 |
| 2004 | $1.016B | $278.8M | $0.74 |
| 2005 | $1.124B | | |

47.     Meanwhile, Defendants were causing the Company to grant them millions of stock options, many of which were misdated.

48.     Moreover, throughout the relevant period certain Defendants exercised many of these stock options permitting them to sell over $131.8 million worth of Altera stock they obtained often by cashing in under-priced stock options:

| DEFENDANT | DATES OF SALES | SHARES SOLD | PROCEEDS RECEIVED |
|---|---|---|---|
| DAANE | 11/3/03-6/9/04 | 230,000 | $4,909,900 |
| REED | 4/18/97-7/30/01 | 360,040 | $8,012,113 |
| BERLAN | 1/2/97-5/5/06 | 1,261,048 | $27,556,782 |
| SARKISIAN | 1/25/96-5/8/06 | 1,438,032 | $35,313,936 |
| SCHUELKE | 2/28/02-4/27/05 | 72,276 | $1,433,622 |
| NEWHAGEN | 10/14/96-5/1/06 | 2,442,421 | $44,532,373 |
| TERRY | 2/18/00-2/2/06 | 430,000 | $10,037,700 |
| TOTAL | | 6,233,817 | $131,796,426 |

49.     On May 8, 2006, Altera announced that the Company would be forced to review the Company's historical stock options granting practices from 1996 to 2000, stating:

Altera Corporation today announced that, as a result of management's recent review of the company's stock option practices, and issues concerning options granted during the period 1996 through 2000, the company's board of directors has established a special committee of independent directors to review the company's historical stock option practices and related accounting. The special committee will be assisted by independent legal counsel and outside accounting experts. Management initiated its review following recent media reports regarding stock option practices at other companies. Although the impact to the company's historical financial statements is not yet known, the company does not expect the review to result in material changes to its historical revenues or non-option related operating expenses. In light of this review, the company will not be able to file its Form 10-Q for the first quarter of 2006, which is due on May 10, 2006. The company is not seeking a five-day extension to file its Form 10-Q because it does not believe it can complete its review by the end of the allowed extension period. Altera does not anticipate that these developments will change the timing of its second quarter business update, currently scheduled for release after the market closes on May 30, 2006.

50.     Then, on May 17, 2006, Altera announced the Company received a notice from Nasdaq officials informing it that it was not in compliance with the exchange's regulations because of its decision to delay the filing of its quarterly earnings report. The Nasdaq Staff Determination notice said that Altera's stock will be delisted from the exchange unless Altera requests a hearing before a special Nasdaq panel, stating:

Altera Corporation today announced that it has received a Nasdaq Staff Determination notice stating that the company is not in compliance with Nasdaq Marketplace Rule 4310(c)(14) because it has not timely filed its Quarterly Report on Form 10-Q for the period ended March 31, 2006. The Nasdaq Staff Determination notice indicated that Altera's securities will be delisted from the Nasdaq Stock Market unless Altera requests a hearing before a Nasdaq Listing Qualifications Panel.  Accordingly, Altera will request a hearing to review the Nasdaq Staff Determination. Pending a decision by the hearing panel, Altera's common stock will remain listed on The Nasdaq National Market. However, there can be no assurance that the hearing panel will grant the company's request for continued listing.

51.     In effect, since 1996 at the latest, defendants caused Altera shares to trade at artificially inflated levels by issuing a series of materially false and misleading statements regarding the Company's financial results.  These financial results misrepresented and omitted to disclose that the Company had problems with its internal controls that prevented it from issuing accurate financial reports and that because of improperly recorded stock-based compensation expenses the Company's publicly reported financial statements and results presented an inflated view of Altera's earnings and EPS.

52.     In the wake of these disclosures, Altera's stock price traded at depressed levels.

53.     Worse yet, the members of Altera's Board of Directors refuse to take any remedial actions against their fellow Board members and business allies responsible for the improper reporting of the Company's stock-based compensation since 1996, although many of these same Defendants pocketed $131.8 million in unlawful insider trading proceeds, by bailing out of their own Altera stock while it traded at prices artificially inflated by Defendants' false statements about Altera's financial results.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

54.     Plaintiff brings this action derivatively in the right and for the benefit of Altera to redress injuries suffered and to be suffered by Altera as a direct result of Defendants' violations of state and federal law, breaches of fiduciary duty, abuse of control, constructive fraud, gross mismanagement and waste of corporate assets, as well as the aiding and abetting thereof, by the Defendants.

55.     Plaintiff will adequately and fairly represent the interests of Altera and its shareholders in enforcing and prosecuting its rights.

56.     Plaintiff is an owner of Altera stock and was an owner of Altera stock during times relevant to Defendants' illegal and wrongful course of conduct alleged herein.

57.     Based upon the facts set forth throughout this Complaint, a pre-filing demand upon the Altera Board of Directors to institute this action against the officers and members of the Altera Board of Directors is excused as futile.  A pre-filing demand would be a useless and futile act because:

(a)     The members of Altera's Board have demonstrated their unwillingness and/or inability to act in compliance with their fiduciary obligations and/or to sue themselves and/or their fellow directors and allies in the top ranks of the corporation for the violations of law complained of herein.  These are people they have developed professional relationships with, who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

(b)     The Altera Board of Directors and senior management participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Altera's stockholders or recklessly and/or consciously negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties. As a result of their access to and review of internal corporate documents, conversations and connections with other corporate officers, employees, and directors, and attendance at management and/or Board meetings, each of the Defendants knew the adverse non-public information regarding the improper stock option grants and financial reporting.  Pursuant to their specific duties as Board members, Defendants are charged with the management of the Company and to conduct its business affairs.  Defendants breached the fiduciary duties that they owed to Altera in that they failed to prevent and correct the improper stock option granting and financial reporting.  Certain directors are also dominated and controlled by the other Defendants and cannot act independently of them.  Thus, the Altera Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of its members participated personally in the wrongdoing or are dependent upon other Defendants who did.

1    (c)    The acts complained of constitute violations of the fiduciary duties owed by

2  Altera's officers and directors and these acts are incapable of ratification.

3    (d)    The members of Altera's Board have benefited, and will continue to benefit,

4  from the wrongdoing herein alleged and have engaged in such conduct to preserve their positions of

5  control and the perquisites derived thereof, and are incapable of exercising independent objective

6  judgment in deciding whether to bring this action.

7    (e)    Altera has been and will continue to be exposed to significant losses due to the

8  wrongdoing complained of herein, yet Altera's Board has not filed any lawsuits against Defendants

9  or others who were responsible for that wrongful conduct to attempt to recover for Altera any part of

10  the damages Altera suffered and will suffer thereby.

11    (f)    Altera's directors would have to sue themselves and the other Defendants,

12  requiring them to expose themselves and their comrades to millions of dollars in civil liability and/or

13  sanctions.  This they will not do.

14    (g)    Altera's current and past officers and directors are protected against personal

15  liability for their acts of mismanagement, waste and breach of fiduciary duty alleged in this

16  Complaint by directors' and officers' liability insurance which they caused the Company to purchase

17  for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of Altera.

18  However, due to certain changes in the language of directors' and officers' liability insurance

19  policies in the past few years, the directors' and officers' liability insurance policies covering the

20  Defendants in this case contain provisions which eliminate coverage for any action brought directly

21  by Altera against these Defendants, known as, *inter alia,* the "insured versus insured exclusion." As

22  a result, if these directors were to sue themselves or certain of the officers of Altera, there would be

23  no directors' and officers' insurance protection and thus, this is a further reason why they will not

24  bring such a suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such

25  insurance coverage exists and will provide a basis for the Company to effectuate a recovery.

26    (h)    To bring this action for breaching their fiduciary duties, the members of the

27  Altera Board would have been required to sue themselves and/or their fellow directors and allies in

28

the top ranks of the Company, who are their personal friends and with whom they have entangling financial alliances, interests and dependencies, which they would not do.

58.     Plaintiff has not made any demand on shareholders of Altera to institute this action since such demand would be a futile and useless act for the following reasons:

(a)     Altera is a publicly traded company with approximately 359 million shares outstanding, and thousands of shareholders;

(b)     Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)     Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## THE STOCK OPTION BACKDATING SCHEME AND ITS IMPACT ON ALTERA'S FINANCIAL STATEMENTS

**The FY 1996 Form 10-K**

59.     On or about March 27, 1997, the Company filed its FY 1996 Form 10-K with the SEC. The FY 1996 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1996 Form 10-K included Altera's FY 1996 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 1997 Form 10-K405**

60.     On or about March 30, 1998, the Company filed its FY 1997 Form 10-K405 with the SEC. The FY 1997 Form 10-K405 was simultaneously distributed to shareholders and the public. The FY 1997 Form 10-K405 included Altera's FY 1997 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 1998 Form 10-K**

61.    On or about March 30, 1999, the Company filed its FY 1998 Form 10-K with the SEC. The FY 1998 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1998 Form 10-K included Altera's FY 1998 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 1999 Form 10-K**

62.    On or about March 24, 2000, the Company filed its FY 1999 Form 10-K with the SEC. The FY 1999 Form 10-K was simultaneously distributed to shareholders and the public. The FY 1999 Form 10-K included Altera's FY 1999 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2000 Form 10-K**

63.    On or about March 8, 2001, the Company filed its FY 2000 Form 10-K with the SEC. The FY 2000 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2000 Form 10-K included Altera's FY 2000 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2001 Form 10-K**

64.    On or about March 8, 2002, the Company filed its FY 2001 Form 10-K with the SEC. The FY 2001 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2001 Form 10-K included Altera's FY 2001 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options. As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2002 Form 10-K**

65.     On or about March 11, 2003, the Company filed its FY 2002 Form 10-K with the SEC. The FY 2002 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2002 Form 10-K included Altera's FY 2002 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2003 Form 10-K**

66.     On or about March 15, 2004, the Company filed its FY 2003 Form 10-K with the SEC. The FY 2003 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2003 Form 10-K included Altera's FY 2003 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2004 Form 10-K**

67.     On or about March 11, 2005, the Company filed its FY 2004 Form 10-K with the SEC. The FY 2004 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2004 Form 10-K included Altera's FY 2004 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As a result, Altera's compensation expense was understated and its net earnings were overstated.

**The FY 2005 Form 10-K**

68.     On or about March 14, 2006, the Company filed its FY 2005 Form 10-K with the SEC. The FY 2005 Form 10-K was simultaneously distributed to shareholders and the public. The FY 2005 Form 10-K included Altera's FY 2005 financial statements which were materially false and misleading and presented in violation of GAAP, due to improper accounting for the backdated stock options.  As a result, Altera's compensation expense was understated and its net earnings were overstated.

69.     The materially false and misleading FY 1996-2005 Form 10-Ks described above were reviewed, prepared and/or endorsed by the Director Defendants.  The FY 1996 10-K was signed by defendant Sarkisian as the Vice President and CFO of Altera.  He also signed the FY 1997-FY 2002 10-Ks as the Senior Vice President and CFO of Altera with former CEO and President Rodney Smith signing as the Chairman of the Board.  Defendant Daane signed the FY 2003-2005 Form 10-Ks as CEO and Chairman of the Board.

### DEFENDANTS' SCHEME BEGINS TO UNRAVEL

70.     The 1996-2005 Proxy Statements concealed Defendants' option backdating scheme. Thus, the Company's shareholders remained unaware of Defendants' wrongdoing when voting on proxy proposals between 1996 and 2005, until Altera announced on May 8, 2006, that the Company would be unable to file its Form 10-Q for the period ended March 31, 2006, as a result of management's recent review of the Company's stock option practices and issues concerning options granted during the period 1996 through 2000.  Then, on May 17, 2006, Altera announced that the Company had received a Nasdaq Staff Determination notice representing that the Company was not in compliance because it has not timely filed its Form 10-Q for the period ended March 31, 2006 and the Company would be delisted from the Nasdaq Stock Market unless Altera requested a hearing before a Nasdaq Listing Qualifications Panel.

### THE ADVERSE IMPACT OF DEFENDANTS' MISCONDUCT

71.     Unlike most companies which avoid such option backdating abuse by issuing stock option grants at the same time each year, which eliminates the potential for backdating, Defendants ensured that executives would not have any such restrictions.  Given the many times Altera's grants were the low of the month in which options were granted, the date of their stock option grants was clearly more than merely coincidental.

72.     As a result of the backdating of options, Defendants have been unjustly enriched at the expense of Altera, which has received and will receive less money from Defendants when they exercise their options at prices substantially lower than they would have if the options had not been backdated.

**TOLLING OF THE STATUTE OF LIMITATIONS**

73.      The Counts alleged herein are timely.  As an initial matter, Defendants wrongfully concealed their manipulation of the stock option plans, through strategic timing and fraudulent backdating, by issuing false and misleading Proxy Statements, by falsely reassuring Altera's public investors that Altera's option grants were being administered by a committee of independent directors, and by failing to disclose that backdated options were, in fact, actually issued on dates other than those disclosed, and that strategically timed option grants were issued based on the manipulation of insider information that ensured that the true fair market value of the Company's stock was, in fact, higher than the publicly traded price on the date of the option grant.

74.      Altera's public investors had no reason to know of the Defendants' breaches of their fiduciary duties until May 2006, when Altera announced that the Company would be forced to review its historical stock options granting practices from 1996 to 2000.  Then, on May 17, 2006, Altera announced the Company had received a notice from Nasdaq officials informing it that it was not in compliance with the exchange's regulations because of its decision to delay the filing of its quarterly earnings report.

75.      Finally, as fiduciaries of Altera and its public shareholders, the Defendants cannot rely on any limitations defense where they withheld from Altera's public shareholders the facts that give rise to the claims asserted herein, *i.e.,* that the Altera Board had abdicated its fiduciary responsibilities to oversee the Company's executive compensation practices, and that the option grant dates had been manipulated to maximize the profit for the grant recipients and, accordingly, to maximize the costs for the Company.

**COUNT I**

**Violations of §10(b) and Rule 10b-5 of the Exchange Act**
**Against All Defendants**

76.      Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

77.      Throughout the relevant period, Defendants individually and in concert, directly and indirectly, by the use and means of instrumentalities of interstate commerce and/or of the mails,

engaged and participated in a continuous course of conduct designed to divert hundreds of millions of dollars to Defendants via improper option grants.

78.     Defendants employed devices, schemes and artifices to defraud while in possession of material, adverse non-public information and engaged in acts, practices and a course of conduct that included the making of, or participation in the making of, untrue and/or misleading statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Altera not misleading.

79.     Defendants, as top executive officers and directors of the Company, are liable as direct participants in the wrongs complained of herein.  Through their positions of control and authority as officers of the Company, each of the Defendants was able to and did control the conduct complained of herein and the content of the public statements disseminated by Altera.

80.     Defendants acted with scienter throughout the relevant period, in that they either had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.  Defendants were among the senior management of the Company, and were therefore directly responsible for the false and misleading statements and/or omissions disseminated to the public through press releases, news reports and filings with the SEC.

81.     Each of the Defendants participated in a scheme to defraud with the purpose and effect of defrauding Altera.

82.     By virtue of the foregoing, Defendants have violated §10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

## COUNT II

### Violations of §14(a) of the Exchange Act Against All Defendants

83.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

84.     Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

85.     The 1996-2005 Proxy Statements violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that Defendants were causing Altera to engage in an option backdating scheme, a fact which Defendants were aware of and participated in from at least 1995.

86.     In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

87.     The misrepresentations and omissions in the Proxy Statements were material to plaintiff in voting on each Proxy Statement.  The Proxy Statements were an essential link in the accomplishment of the continuation of Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation of shareholders' endorsement of the directors' positions, the executive officers' compensation and the Company's compensation policies.

88.     The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT III

### Violations of §20(a) of the Exchange Act Against All Defendants

89.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.     Defendants, by virtue of their positions with Altera and their specific acts, were, at the time of the wrongs alleged herein, controlling persons of Altera within the meaning of §20(a) of the Exchange Act.  They had the power and influence and exercised the same to cause Altera to engage in the illegal conduct and practices complained of herein.

**COUNT IV**

**Accounting**

91.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     At all relevant times, Defendants, as directors and/or officers of Altera, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

93.     In breach of their fiduciary duties owed to Altera and its shareholders, the Defendants caused Altera, among other things, to grant backdated stock options to themselves and/or certain other officers and directors of Altera.  By this wrongdoing, the Defendants breached their fiduciary duties owed to Altera and its shareholders.

94.     The Defendants possess complete and unfettered control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Defendants.

95.     As a result of Defendants' misconduct, Altera has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options which have been exercised and sold.

96.     Plaintiff demands an accounting be made of all stock options grants made to Defendants, including, without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Defendants, as well as the disposition of any proceeds received by the Defendants via sale or other exercise of backdated stock option grants received by the Defendants.

**COUNT V**

**Breach of Fiduciary Duty and/or Aiding and Abetting Against All Defendants**

97.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98.     Each of the Defendants agreed to and did participate with the other Defendants and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of fiduciary duties the Defendants owed to the Company.

99. The Defendants have violated fiduciary duties of care, loyalty, candor and independence owed to Altera and its public shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of Altera and its shareholders.

100. As demonstrated by the allegations above, Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to Altera and its public shareholders, and they failed to disclose material information and/or made material misrepresentations to shareholders regarding Defendants' option backdating scheme.

101. By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Altera and its public shareholders.

102. As a proximate result of Defendants' conduct, Altera has been injured and is entitled to damages.

**COUNT VI**

**Abuse of Control Against All Defendants**

103. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

104. The Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige and profit at, and control over, Altera, and to continue to receive the substantial benefits, salaries and emoluments associated with their positions at Altera. As a part of this scheme, Defendants actively made and/or participated in the making of or aided and abetted the making of, misrepresentations regarding Altera.

105. Defendants' conduct constituted an abuse of their ability to control and influence Altera.

106. By reason of the foregoing, Altera has been damaged.

## COUNT VII

### Gross Mismanagement Against All Defendants

107.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

108.    Defendants had a duty to Altera and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Altera.

109.    Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of Altera in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of Altera's affairs and in the use and preservation of Altera's assets.

110.    During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet Defendants caused Altera to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Altera, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged Altera.

111.    By reason of the foregoing, Altera has been damaged.

## COUNT VIII

### Constructive Fraud Against All Defendants

112.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

113.    As corporate fiduciaries, Defendants owed to Altera and its shareholders a duty of candor and full accurate disclosure regarding the true state of Altera's business and assets and their conduct with regard thereto.

114.    As a result of the conduct complained of, Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Altera's

1  shareholders despite their duties to, *inter alia,* disclose the true facts regarding their stewardship of

2  Altera.  Thus they have committed constructive fraud and violated their duty of candor.

3       115.   By reason of the foregoing, Altera has been damaged.

## COUNT IX

### Corporate Waste Against All Defendants

6       116.   Plaintiff incorporates by reference and realleges each and every allegation set forth

7  above, as though fully set forth herein.

8       117.   By failing to properly consider the interests of the Company and its public

9  shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to

10  Defendants via the option backdating scheme, Defendants have caused Altera to waste valuable

11  corporate assets.

12       118.   As a result of Defendants' corporate waste, they are liable to the Company.

## COUNT X

### Unjust Enrichment Against All Defendants

15       119.   Plaintiff incorporates by reference and realleges each and every allegation set forth

16  above, as though fully set forth herein.

17       120.   As a result of the conduct described above, Defendants will be and have been unjustly

18  enriched at the expense of Altera, in the form of unjustified salaries, benefits, bonuses, stock option

19  grants and other emoluments of office.

20       121.   All the payments and benefits provided to the Defendants were at the expense of

21  Altera.  The Company received no benefit from these payments.  Altera was damaged by such

22  payments.

23       122.   Certain of the Defendants sold Altera stock for a profit during the period of deception,

24  misusing confidential non-public corporate information.  These Defendants should be required to

25  disgorge the gains which they have and/or will otherwise unjustly obtain at the expense of Altera.  A

26  constructive trust for the benefit of the Company should be imposed thereon.

27

28

## COUNT XI

### Against the Officer Defendants for Rescission

123.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

124.     As a result of the acts alleged herein, the stock option contracts between the Officer Defendants and Altera entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control.  Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Officer Defendants' employment agreements and the Company's stock option plan which was also approved by Altera shareholders and filed with the SEC.

125.     All contracts which provide for stock option grants between the Officer Defendants and Altera and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

## COUNT XII

### Against the Insider Selling Defendants for Violation of California Corporations Code §25402

126.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

127.     At the time that the Insider Selling Defendants sold their Altera common stock as set forth herein at ¶48, by reason of their high executive and/or directorial positions with Altera, the Insider Selling Defendants had access to highly material information regarding the Company, including the information set forth herein regarding the true adverse facts of Altera's improper accounting.

128.     At the time of such sales, that information was not generally available to the public or the securities markets.  Had such information been generally available, it would have significantly reduced the market price of Altera shares at that time.

129.   The Insider Selling Defendants, and each of them, had actual knowledge of material, adverse non-public information and thus sold their Altera common stock in California in violation of California Corporations Code §25402.

130.   Pursuant to California Corporations Code §25502.5, the Insider Selling Defendants, and each of them, are liable to Altera for damages in an amount up to three times the difference between the price at which Altera common stock was sold by the Insider Selling Defendants, and each of them, and the market value which Altera common stock would have had at the time of the sale if the information known to these defendants, and each of them, had been publicly disseminated prior to that time and a reasonable time had elapsed for the market to absorb the information.

## COUNT XIII

**Against the Insider Selling Defendants for Breach of Fiduciary
Duties for Insider Selling and Misappropriation of Information**

131.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

132.   At the time of the stock sales set forth herein, the Insider Selling Defendants knew the information described above, and sold Altera common stock on the basis of such information.

133.   The information described above was proprietary non-public information concerning the Company's financial condition and future business prospects.  It was a proprietary asset belonging to the Company, which the Insider Selling Defendants used for their own benefit when they sold Altera common stock.

134.   At the time of their stock sales, the Insider Selling Defendants knew that the Company's revenues were materially overstated.  The Insider Selling Defendants' sales of Altera common stock while in possession and control of this material adverse non-public information was a breach of their fiduciary duties of loyalty and good faith.

135.   Since the use of the Company's proprietary information for their own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendants obtained thereby.

1

**PRAYER FOR RELIEF**

2      WHEREFORE, plaintiff demands judgment as follows:

3      A.      Awarding money damages against all Defendants, jointly and severally, for all losses

4  and damages suffered as a result of the acts and transactions complained of herein, together with pre-

5  judgment interest, to ensure Defendants do not participate therein or benefit thereby;

6      B.      Directing all Defendants to account for all damages caused by them and all profits

7  and special benefits and unjust enrichment they have obtained as a result of their unlawful conduct,

8  including all salaries, bonuses, fees, stock awards, options and common stock sale proceeds and

9  imposing a constructive trust thereon;

10      C.      Directing Altera to take all necessary actions to reform and improve its corporate

11  governance and internal control procedures to comply with applicable law, including, but not limited

12  to, putting forward for a shareholder vote resolutions for amendments to the Company's By-Laws or

13  Articles of Incorporation and taking such other action as may be necessary to place before

14  shareholders for a vote adoption of the following Corporate Governance policies:

15          (i)      a proposal requiring that the office of CEO of Altera and Chairman of the

16  Altera Board of Directors be permanently held by separate individuals and that the Chairman of the

17  Altera Board meets rigorous "independent" standards;

18          (ii)      a proposal to strengthen the Altera Board's supervision of operations and

19  develop and implement procedures for greater shareholder input into the policies and guidelines of

20  the Board;

21          (iii)      appropriately test and then strengthen the internal audit and control functions;

22          (iv)      rotate independent auditing firms every five years;

23          (v)      control and limit insider stock selling and the terms and timing of stock option

24  grants; and

25          (vi)      reform executive compensation.

26      D.      Ordering the imposition of a constructive trust over Defendants' stock options and

27  any proceeds derived therefrom;

28      E.      Awarding punitive damages;

1       F.      Awarding costs and disbursements of this action, including reasonable attorneys',

2  accountants', and experts' fees; and

3       G.     Granting such other and further relief as this Court may deem just and proper.

4                             **JURY DEMAND**

5      Plaintiff demands a trial by jury.

6  DATED:  July 17, 2006             LERACH COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS LLP

7                             SHAWN A. WILLIAMS

8

9                                       _____

10                                 SHAWN A. WILLIAMS

11                        100 Pine Street, Suite 2600
                        San Francisco, CA  94111

12                        Telephone:  415/288-4545
                        415/288-4534 (fax)

13

14                        LERACH COUGHLIN STOIA GELLER
                          RUDMAN & ROBBINS LLP

15                        WILLIAM S. LERACH
                        DARREN J. ROBBINS

16                        TRAVIS E. DOWNS III
                        655 West Broadway, Suite 1900

17                        San Diego, CA  92101
                        Telephone:  619/231-1058

18                        619/231-7423 (fax)

19                        Attorneys for Plaintiff

S:\CasesSD\Altera Derivative\cpt altera fed derv_2.doc

20

21

22

23

24

25

26

27

28

1

2

3

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

4

5

6
_____
ATTORNEY OF RECORD FOR PLAINTIFF
WAYNE COUNTY EMPLOYEES'
RETIREMENT SYSTEM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>VERIFICATION</u>

2

I, SHAWN A. WILLIAMS, hereby declare as follows:

3

    1.    I am a member of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins,

4

LLP, counsel for plaintiff in the above-entitled action.  I have read the foregoing complaint and

5

know the contents thereof.  I am informed and believe the matters therein are true and on that ground

6

allege that the matters stated therein are true.

7

    2.    I make this Verification because plaintiff is absent from the County of San Francisco

8

where I maintain my office.

9

Executed this 17th day of July, 2006 at San Francisco, California.

10

11

SHAWN A. WILLIAMS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28